IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| | *   Criminal No. JFM-04-0029 |
| | *   Civil No. JFM-12-2849 |
| | * |
| SHAWN GARDNER | * |
| | ***** |

MEMORANDUM

Shawn Gardner was sentenced to life imprisonment after having been convicted by a jury of six offenses. He appealed his convictions to the Fourth Circuit, and the convictions were affirmed. He has now filed a motion under 28 U.S.C. § 2255. For the following reasons, the motion will be denied.

1. <u>There was no error in the instructions concerning Counts 1 and 8.</u>

Gardner contends that his counsel was ineffective for failing to object to an alleged error in the instructions. Judge Davis instructed the jury that there was no difference between RICO Act 9 alleged in Count 1 and Count 8. The alleged error consisted of the fact that RICO Act 9 charged that Gardner conspired to distribute drugs whereas Count 8 charged that Gardner conspired to distribute and/or possess with intent to distribute drugs. Clearly, Gardner was not prejudiced by the error he alleges insofar as his Count 1 conviction is concerned because the jury found that all nine of the racketeering acts charged in Count 1 were committed. Only two racketeering acts had to be found to sustain the conviction. Likewise, clearly he was not prejudiced by his conviction as to Count 8 in light of the factual findings made by the jury as to Count 1 and in light of the fact that the charge in Count 8 was broader than the charge in Count

1

1.[1]  Moreover, there was no constructive amendment of the indictment and no *Pinkerton* error in light of the jury's findings.

    2. <u>Any error in part of the instruction concerning Count 7 was handled</u>

Gardner next contains that his counsel was ineffective for not arguing at trial and then on appeal that Judge Davis effectively amended Count 7 by instructing the jury that Gardner could be found guilty if the murder charge in Count 7 was committed for anything of value. At one point in his instructions Judge Davis did abbreviate the language contained in Count 7 and elsewhere in his instructions to say that the murder had to be "in consideration of the receipt of anything of value." However, Judge Davis read Count 7 to the jury in its entirety and that Count stated that the murder had to be "as consideration for the receipt and for a promissory agreement to pay a thing of value from the Randallstown/Park Heights organization." Judge Davis repeated this language in explaining the fifth element the jury would have to find.

Likewise, there is no merit to Gardner's argument that AUSA Michael Hanlon misstated the element that the Government had to prove. Hanlon did point out in his closing argument that the murderers of Tanya Spence stole her cellphone. That, however, was a fact according to the evidence, and the Government did not contend that theft of the cellphone provided the motivation for murdering Ms. Spence. Rather, throughout the case the Government took the position that Gardner and his co-conspirators mounted a home invasion robbery of Darius Spence, a drug dealer who reportedly kept a very large amount of money and drugs in his apartment, in order to pay for a lawyer for one of the co-conspirators. Tanya Spence was executed because she jumped from the apartment's balcony and would have been able to identify

---

[1] It is to be noted that the Supreme Court has held that to be convicted as a RICO conspirator, a defendant need not have committed personally the acts committed during the course of the conspiracy. *See Salinas v. United States*, 522 U.S. 52 (1997).

the robbers if she was left alive.  No one argued that the motive for murdering her was to steal her cellphone.

    3. <u>Judge Davis properly imposed a sentence of life imprisonment upon Gardner</u>

Gardner makes two arguments about receiving a life sentence.  First, he argues that although he was charged with first degree armed robbery murder, he was convicted of second degree murder.  He complains that Judge Davis never found that Gardner committed first degree murder, as he was required to do under the applicable Sentencing Guidelines.  The fallacy in this argument is that Gardner was convicted of felony murder, and under Maryland law, that is first degree murder.  Second, under 18 U.S.C. § 1959(a(1), the only two possible punishments for the offense of which Gardner was convicted was life imprisonment or imposition of the death penalty.  The Government was not seeking the death penalty.  Therefore, the only sentence that Judge Davis could lawfully impose was life imprisonment.

    4. <u>No plea offers were extended to Gardner</u>

Gardner contends that his counsel was ineffective because they advised him that if he pled guilty, he would be unable to successfully appeal from his conviction in state court for the underlying murder.  He contends that they should have urged him to accept the plea that would have resulted in a sentence ranging from twenty-four to thirty years.  The record establishes that, in fact, no plea offer was ever made to Gardner's counsel.  The plea offer that Gardner has attached to the memorandum was made to another defendant.

    5. <u>Counsel were not ineffective at making the decision to have only one medical examiner testify</u>

Gardner argues that his counsel was ineffective because they allowed only one medical examiner to testify and allowed him to be the vehicle for the introduction of the reports of other

medical examiners. The decision to permit the Government to call only one medical examiner was well within the strategic discretion of counsel, and the decision was amply justified, particularly in light of the fact that the issues discussed in the autopsy reports were not related to any defense that Gardner had.

      6. <u>There was no violation of the Interstate Agreement on Detainers</u>

As the transcript of hearing held before Judge Davis on April 26, 2007 amply demonstrates, there simply was no violation of the Interstate Agreement on Detainers. In his "Traverse," Gardner argues that the Government should provide to me for *in camera* review all the documentation relating to whether the U.S. Marshal paid the Maryland Department of Public Safety and Transportation all costs associated with the detention of Gardner in a state facility while he was formally in federal custody. Assuming that the documentation shows that the Marshal did not make the necessary payments to the Maryland Department of Public Safety and Correctional Services, that would prove nothing insofar as Gardner's IAD argument is concerned. At the most it would demonstrate that civilly the federal government is liable to the State for the detention services provided by the State.

      7. <u>Gardner's claim that Judge Davis violated Fed. R. Crim. P. 12 by failing to rule on the IAD issue has been procedurally defaulted</u>

It appears from the April 26, 2007 transcript that Judge Davis did not formally rule upon Gardner's motion to dismiss the indictment for alleged violation of the IAD. He said that he would take another look at the matter. However, it is clear that Judge Davis was persuaded by the Government's recitation of what had occurred, and he indicated that in any event any dismissal of the indictment would not be with prejudice. Gardner did not raise the issue on appeal, and it has been procedurally defaulted. *See United States v. Mikaljunas*, 186 F.3d 490,

493 (4th Cir. 1999).

    8. <u>Counsel was not ineffective in not recalling Darryl Bacon</u>

Counsel was not ineffective in deciding not to have Darryl Bacon recalled as a witness. Darryl Bacon was a Government cooperator. He testified early in the trial and was cross-examined at length. Gardner's lawyers were aware of letters that Gardner has in his possession in which Bacon stated that "he didn't know anything and that they wanted him to lie." Counsel decided not to recall Bacon. This was purely a matter of trial strategy. As Judge Davis indicated, the letter was a "lulling letter," in which Bacon tried to persuade Gardner to believe that he was not cooperating. If recalled, there was (as Gardner's counsel knew) a risk that Bacon would explain that he sent the letter because he was afraid that Gardner would kill him or otherwise put him at risk. That testimony would not have been helpful to Gardner.

    9. <u>Government counsel did not "vouch for" the credibility of the Government's witness in its closing argument</u>

Gardner complains that in its closing argument Government counsel stated that all of them [the plea agreements] are "structured to create a maximum incentive on person pleading guilty to tell the absolute truth." If I had been the presiding judge, and an objection had been made, I may very well have asked counsel to rephrase the argument to state that it appears from the letters themselves that they are "structured to create a maximum incentive on the person pleading guilty to tell the absolute truth." Otherwise, it might be inferred that the prosecutor, as a party to the agreement, had personal knowledge about how the agreement was structured. However, a mistake (if any) in the language of closing argument is not the kind of stuff that gives rise to Section 2255 relief.

    10. <u>Judge Davis conducted a proper voir dire examination</u>

Gardner makes a general claim that Judge Davis abused his discretion in the manner in

5

which he conducted the voir dire examination. Gardner cites nothing in the record to substantiate that claim. Moreover, because he did not raise the issue on appeal, Gardner would have to show cause and prejudice resulting from the error he alleges, and he has not attempted to do so. *See Mikaljunas*, 186 F.3d at 593.[2]

A separate order denying Gardner's motion is being entered herewith.


Date:   March 8, 2013            /s/_____
                                 J. Frederick Motz
                                 United States District Judge

---

[2] On February 28, 2013 Gardner filed a "motion to amend and amended motion to vacate" in which he asserted yet another ground for relief: that his counsel were ineffective in not requiring a hearing under *Remmer v. United States*, 347 U.S. 227 (1954) concerning a note sent to the judge by a lawyer. The note, from juror #6, stated that his coworkers were teasing him good naturedly about serving on a jury so long "but at least the case was interesting" to which his boss replied "Yeah, but the defense is bogus." In the letter the juror stated that he promptly scolded his supervisor for saying anything and left the table. She apologized and said she was kidding. The juror went on to say that the supervisor's comment "didn't bother or affect me one way or the other but I felt like I should bring it to your attention." Gardner alleges that his raising this issue on an untimely basis should be excused because he was not permitted to communicate with a codefendant who had raised the issue in his own Section 2255 petition. That argument is extremely questionable. In any event, in light of the fact that the juror stated that he had not been affected by the conversation, no hearing was required.